UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LESTER M.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:20-cv-952

Cole, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Lester M. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents a single claim of error for this Court's review. As explained below, I conclude that the non-disability decision is supported by substantial evidence in the record as a whole and therefore should be AFFIRMED.

**I. Summary of Administrative Record**

On February 20, 2018, Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning on the date of his applications based upon back and hip pain, as well as depression, PTSD, and high blood pressure. (Tr. 21, 92). After his applications were denied initially and on reconsideration, Plaintiff requested an evidentiary hearing. On November 19, 2019, Plaintiff appeared with a non-attorney representative and testified before Administrative Law Judge ("ALJ") Renita K. Bivins. A vocational expert also

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.

1

testified. (Tr. 42-90). On February 12, 2020, the ALJ issued an adverse decision. (Tr. 12-41).

Plaintiff has an eleventh grade "limited" education and was 48, in the "younger individual" age category, on his alleged disability onset date. During the proceedings, he progressed to the age category of "closely approaching advanced age." (*See* Tr. 32). He is divorced and lives alone in an apartment that requires him to walk up two and a half flights of stairs, approximately 22 steps. (Tr. 49). Prior to his alleged disability, he worked as a garbage truck driver, as a motor coach driver, and as a roll-off truck driver for Rumpke until he was injured in a motor vehicle accident in August 2016. (Tr. 50-55). After that injury, he continued working light duty, working as a laundry room attendant at a YMCA. (Tr. 61-62). Plaintiff underwent back surgery (lumbar decompression and fusion) on March 29, 2019 after more conservative treatment failed to provide adequate relief for his chronic back pain.

In her decision, the ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease and herniated discs of the lumbosacral spine with lumbar radiculopathy status post lumbar decompression and fusion in March 2019; failed back syndrome; a non-detached labral tear of the left hip; an unspecified depressive disorder; an unspecified anxiety disorder; and a somatic symptom disorder." (Tr. 17-18). Although Plaintiff testified at the hearing that headaches also contributed to his disability, the ALJ determined that headaches were neither a severe nor a medically determinable impairment based upon his treatment records. (Tr. 18). Plaintiff does not dispute the ALJ's determination of which impairments were severe. He also does not dispute that none of his impairments, either alone or in combination, met or medically equaled any

Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that he would be entitled to a presumption of disability.

After considering Plaintiff's impairments, the ALJ next determined that Plaintiff retains the residual functional capacity ("RFC") to perform light work, defined as able to lift/carry up to twenty pounds occasionally and ten pounds frequently. (Tr. 20). However, she added the following non-exertional limitations:

> The claimant is able to stand and/or walk for six hours and sit for six hours per eight-hour workday with normal breaks. The claimant can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant can frequently balance, but only occasionally stoop, kneel, crouch, and crawl. The claimant should avoid all exposure to hazards of climbing ladders, ropes, and scaffolds, unprotected heights, and dangerous moving machinery. The claimant can maintain concentration, attention, sustained persistence, and pace to complete detailed tasks and occasional complex tasks with no demand for fast pace. The claimant can interact with the public, coworkers, and supervisors occasionally, or no more than one third of the workday. The claimant is able to adapt to work processes and environments with no timed tasks or production rate quotas.

(Tr. 21).

Considering Plaintiff's age, education, and RFC, and based on testimony from the vocational expert, the ALJ determined that Plaintiff could still perform his past work as a laundry worker.[2] In addition, the ALJ found that Plaintiff could perform a "significant number" of other jobs in the national economy, including the representative jobs of merchandise marker, routing clerk, mail clerk, or parking lot cashier. (Tr. 33). Therefore, the ALJ determined that Plaintiff was not under a disability up through the date of her decision. The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

---

[2] Plaintiff testified that he washed and dried towels, folded them on a cart, and moved the cart to where YMCA members could access the fresh towels as needed.

In his appeal to this Court, Plaintiff disputes the ALJ's physical RFC determination that he remains capable of performing a modified range of light work, including but not limited to his past job as a laundry attendant. Plaintiff argues that the ALJ should have limited him "to at least a sedentary position" rather than light work. (Doc. 11 at 13, PageID 2170). If limited to sedentary work, Plaintiff would have been entitled to a presumption of disability on August 5, 2019, his 50th birthday. *See* Grid Rule 201.10.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity ("SGA"); at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520(g), 404.1560(c), 416.920(g) and 416.960(c).

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §§ 404.1512(a); 416.912(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. *See* 42 U.S.C. § 423(d)(1)(A).

5

### B. Plaintiff's Claim of Error

Plaintiff's sole claim is that the ALJ's physical RFC finding that he remains capable of light work in general, and his prior laundry attendant job in particular, is not supported by substantial evidence. In support of his contention that the ALJ should have found him to be limited to the sedentary exertional level (or below), Plaintiff cites to three things: (1) his subjective complaints of disabling pain and need for a cane; (2) records supporting his reported cane use; and (3) an opinion from a physical therapist who opines that Plaintiff has multiple disabling limitations, and "potentially" needs a cane and/or walker for ambulation. However, none of the referenced evidence overcomes the substantial evidence that supports the ALJ's RFC determination.

Plaintiff particularly criticizes the ALJ's failure to include use of a cane as well as a sit/stand option. But the record suggests the ALJ would have reached the same non-disability determination even if she had accepted those limitations. After explaining at length why she determined that no cane was needed and why she believed Plaintiff capable of the exertional requirements of light work, the ALJ went on to discuss the VE's testimony that an individual with Plaintiff's physical RFC would be capable of performing the job of parking lot cashier (of which 70,000 jobs exist nationally at Plaintiff's RFC level) *even if* the use of a cane and a sit/stand option were added. (Tr. 33, 84-85). Of course, ultimately the ALJ rejected those additional limitations. The record supports that decision.

### 1. The Assessment of Plaintiff's Subjective Complaints

In a function report submitted in connection with his applications, Plaintiff alleged that he was severely limited in his abilities to sit, stand, walk, lift, squat, bend, kneel, climb stairs and concentrate and remember due to "extreme back pain" and hip pain. (Tr. 21; Tr. 283-290). He reported being unable to lift more than 10 pounds or walk more than a

6

half-block at a time. (*Id*.; Tr. 288). He stated that he spends nearly the entire day lying in bed, and only "sometimes" gets out of bed "for a little while." (Tr. 22, 284). At the hearing, he similarly testified that his back and hip pain prevent him from working and require him to use a cane. However, the ALJ did not find Plaintiff's pain was disabling or that he needs a cane on a daily basis. Instead, she found that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 22).

Not all back pain is "disabling," and many non-disability determinations are affirmed notwithstanding evidence to support some level of chronic pain. *See generally*, *Blacha v. Sec'y of HHS*, 927 F.2d 228, 231 (6th Cir. 1990) (affirming ALJ's determination that pain from nerve root compression due to herniated disc and degenerative changes did not preclude all work). While subjective pain complaints can support disability, cases based on allegations of disabling pain that are not wholly supported by objective evidence are often among the most difficult to resolve. That is one reason why an ALJ's assessment of subjective symptoms including pain complaints is generally given great deference. *See Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). In fact, a credibility/consistency determination[3] cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are inconsistencies and contradictions

---

[3] An ALJ's assessment of symptoms, formerly referred to as the "credibility" determination in SSR 96-7p, was clarified in SSR 16-3p to remove the word "credibility" and refocus the ALJ's attention on the "extent to which the symptoms can reasonably be accepted as <u>consistent</u> with the objective medical and other evidence in the individual's record." SSR 16-3p, 2017 WL 5180304 at *2 (October 25, 2017) (emphasis added).

7

among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Here, the ALJ explained that although Plaintiff testified that he received little to no relief from any of his treatments, those reports were not consistent with medical records that repeatedly documented his reports to his physicians that many treatments (including medications and epidural steroid injections) were effective. (Tr. 22). And, while Plaintiff reported decreased efficacy of pain medications shortly before his March 2019 surgery, post-surgical notes consistently indicated that Plaintiff had reported he was "doing well with no significant complaints" aside from "occasional back discomfort." (Tr. 22-23). The ALJ noted that Plaintiff reported that his medication regimen post-surgery continued to be effective even after his treating physician discontinued his narcotic medications and decreased non-narcotic pain medications.

The ALJ also discussed numerous records that demonstrated Plaintiff's failure to comply with prescribed treatment regimens, including reports that Plaintiff ran out of medications early and did not seek timely refills, that he reported to Dr. Simons that he had a TENS unit that he was not using (in contrast to hearing testimony and disability function reports that he frequently used his TENS unit), and Plaintiff's failure to follow up with prescribed physical therapy after surgery. The ALJ also discussed, as an example of Plaintiff's non-compliance, the fact that his pain specialist decreased his medication regimen following an August 2019 failed drug screen in which he tested positive for "very high level[s] of alcohol and cocaine […] during the middle of the day." (Tr. 1930). Dr. Simons agreed to continue prescribing a reduced does of non-narcotic medication and referred him to a drug rehabilitation program at the time, but Plaintiff did not follow up. (*Id.*; *see also* Tr. 23-24, 29; Tr. 2032, 2035, 2067).

The ALJ also discussed workers' compensation evidence that noted "evidence of malingering" in regard to his back and hip complaints, which included video surveillance of Plaintiff ambulating normally without a cane since November 2017 "in all instances except for his doctor's office visits and his transitional work." (Tr. 23; Tr. 612-613).  The surveillance included the date of his independent medical examination where Plaintiff used his cane when entering and leaving his physician's office but not at other times the same day, including when going to stores and visiting a residence.  In addition, multiple inconsistencies in Plaintiff's alleged abilities were noted during independent medical exams, including: discrepancies between formal range of motion testing and the range of motion he demonstrated during other parts of the same evaluation; a "very unusual pattern" on heel/toe waking that an orthopedic surgeon had "never seen before"; and muscle testing that was deemed to be unreliable due to pain, give-way and "lack of effort." (Tr. 23; *see also* Tr. 614-620, 694-707)

Last, the ALJ discussed medical records that were not consistent with Plaintiff's claimed use of a cane or allegedly disabling pain complaints. (Tr. 24).  For example, multiple physicians repeatedly found of a lack of distress or pain behaviors and normal gait, normal strength, sensation, reflexes, balance and hand function.  While a few entries reflected an antalgic gait and mild to moderate tenderness to palpation in the lumbar spine, those entries did not indicate that Plaintiff was using a cane or other assistive device at the time.  Plaintiff's orthopedic surgeon similarly documented no signs of stress and overall normal findings both before and after Plaintiff's spine surgery, and observed Plaintiff ambulating with a cane only during a single visit in September 2019.  (Tr. 24).

> Clinical exams by most other doctors since the alleged onset date have also documented normal gait, strength, sensation, reflexes, balance, and hand function. (*See, e.g.,* Exhibits 18F, p. 11, 15; 22F, p. 4-7). The main exceptions have been a couple of Dr. Simons' pain clinic notes where the

9

> claimant reportedly demonstrated some neuromotor deficits, an unsteady gait, and/or positive straight leg raise testing and a onetime functional capacity evaluation by a physical therapist. (Exhibits 23F; 26F, p. 6-7; 29F, p. 2). Furthermore, it is noteworthy that treatment notes have recorded the claimant using a cane on only two occasions since the alleged onset date despite his reports that he has been using a cane on a daily basis.

(Tr. 24, footnotes omitted).

After discussing the inconsistencies of Plaintiff's allegations with the medical evidence, the ALJ discussed the internal inconsistencies of Plaintiff's own reports. For example, Plaintiff reported that he could prepare simple meals on a daily basis, do his own "very light" laundry, take out small trash bags, drive 3-4 times per week on average, shop for groceries for 45-50 minutes per week and maintain his personal care. (Tr. 25). And, although Plaintiff reported in his function report and at the hearing that he receives assistance with household chores, that testimony conflicted with reports in the medical record that Plaintiff reported "no help available." (Tr. 25, citing Tr. 1795-1796). Plaintiff also reported that he continues to get together with friends to play cards and watch sporting events twice per week. (Tr. 25). Contrary to the more extreme limitations he endorsed in his function report, Plaintiff described his activity level as "active" to a treating physician and reported a "fair" ability to perform "work, household work, and outside work," walk and maintain relationships with others. (*Id.*; Tr. 1931).

The evidence summarized above easily constitutes "substantial evidence" to support the ALJ's determination that Plaintiff's subjective complaints of disabling pain and reported daily cane use were not fully consistent with the record.

### 2. The ALJ's rejection of Plaintiff's Cane Use is Substantially Supported

To the extent that Plaintiff particularly focuses on the ALJ's failure to include an RFC requirement for an assistive device, the ALJ appropriately considered the evidence required to show medical necessity. "According to Social Security Ruling 96-9p, to find

10

that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed such as whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information." (Tr. 30).

Plaintiff points to a "work excuse" that his physical medicine and rehabilitation specialist provided on his alleged disability onset date,[4] which states that Plaintiff should be permitted to use a cane at work "as needed for pain." (Tr. 24 at n.2, citing Tr. 1562). However, the referenced note does not satisfy the standard under SSR 96-9p, and there was "little evidence of him actually using a cane in the treatment record." (*Id*.; *see also* Tr. 29, noting that the record did not support that Plaintiff used a cane on a "continuous or frequent basis" and did not prove that a cane "remains medically required" other than for a brief period after his March 2019 back surgery; Tr. 30 discussing examination records from September 2018 through January 2019, as well as post-surgical records that did not mention use of a cane).

Plaintiff cites to isolated records that support his allegation that he uses a cane. But the ALJ discussed those records in the context of the record as a whole, including: (1) a record noting cane use upon release from the hospital immediately after his March 2019 back surgery, and (2) a notation of cane use on June 28, 2019 at his first visit to the Cincinnati Pain Center.[5] (Tr. 30). In addition, while the ALJ largely rejected as

---

[4] Plaintiff continued to work beyond his alleged date of disability, but at a level that did not amount to "substantial gainful activity."
[5] An August 1, 2019 visit included a handwritten notation "cane" but, as discussed by the ALJ, the same note did not indicate that Plaintiff was using a cane and stated that Plaintiff was obtaining 60% relief from his medications and was not interested in spinal cord stimulation in part because he already had a TENS unit that he was not using. (Tr. 30).

11

unpersuasive the opinion of physical therapist Klusman, the ALJ pointed out that even Mr. Klusman opined no more than that Plaintiff could "potentially" require a cane, without noting any use of a cane on the date of the functional capacity evaluation. (Tr. 30). Thus, the ALJ's decision not to include the use of a cane is also supported by substantial evidence.

### 3. The ALJ's Evaluation of the Opinion Evidence[6]

In his final criticism of the ALJ's determination of his RFC, Plaintiff accuses the ALJ of improperly rejecting an opinion from Mr. Klusman, the physical therapist who performed a functional capacity exam. Instead, the ALJ primarily relied upon the RFC assessments from two agency consulting physicians, Drs. Mikalov and Bolz, whose opinions she found to be "persuasive." However, the ALJ altered their RFC opinions "to further accommodate any distractibility from his medications and/or pain." (Tr. 25). Explaining her decision, the ALJ stated that both agency physicians "supported their conclusions with a discussion of the medical evidence available during their reviews and the limitations identified remain largely consistent with the record at the hearing level, where clinical exams have generally recorded normal neuromotor function with few range of motion abnormalities, the general lack of references to the claimant requiring a cane on exams since the alleged onset date, 'evidence of malingering' from the worker's compensation records pertaining to his gait and general clinical presentation, and the treatment records indicating that the claimant received significant relief from his various treatment options." (Tr. 26).

---

[6]Because Plaintiff filed his application after March 27, 2017, recently revised regulations apply. *See generally*, 20 C.F.R. § 404.1520c. Rather than assigning a particular "weight" to each opinion under the previously defined hierarchy of medical opinions, the new regulations require the ALJ to determine the "persuasiveness" of each prior administrative medical finding or other medical opinion based upon a list of factors, of which the most important are "supportability" and "consistency." *See* 20 C.F.R. § 404.1520c(b)(2).

In contrast, the ALJ found "not persuasive" the opinion dated July 12, 2019 from the physical therapist. (Tr. 1897-1903). Mr. Klusman opined that Plaintiff would have "a frequent need to switch positions and take multiple breaks,…including leaving [his] work station…and potentially elevating [his] legs." (Tr. 1898). Due to the frequent breaks, Mr. Klusman further opined that Plaintiff would be off task by more than 20% of the work day. (*Id*.) In addition, he opined that Plaintiff "requires" a back brace (though there is no evidence of back bracing in the record) and "potentially a cane and/or walker for ambulation." (*Id*.) The ALJ fully explained why she did not find those opinions to be consistent or supportable:

> After a one-time evaluation in July 2019, Mr. Klusman, who is not an acceptable medical source, opined that the claimant is "unable to return to work in any capacity." (Exhibit 23F). Mr. Klusman further opined that the claimant requires "back bracing and potentially a cane and/or walker for ambulation, that he is not capable of lifting or carrying "anything at all," and he would need "multiple breaks" and need to switch positions frequently to the point that he would be off-task more than 20% of the workday. (*Id*.). This report is not persuasive given that the extreme nature of the limitations reported is at odds with the remainder of the record, such as the primarily normal neuromotor and range of motion findings on clinical exams since the alleged onset date, the lack of references to the claimant using an assistive device (or back brace) in the clinical exams since the alleged onset date, the "evidence of malingering" addressed at length above, and the treatment records indicating the claimant repeatedly reported significant relief from his various treatment modalities. The reported limitations are also inconsistent with his activity level since the alleged onset date, including the surveillance footage from worker's compensation records documenting him going to stores independently and his reports that he shops for groceries and does light laundry loads despite Mr. Klusman reporting that he is unable to lift or carry any weight.

(Tr. 26).

Plaintiff argues that the ALJ should have accepted Mr. Klusman's report as "consistent with" an "opinion" from his pain specialist, Dr. Simons, that Plaintiff can only walk with a cane, walker or crutches, and cannot sit for more than 4 hours. (Tr. 1933). Plaintiff also accuses the ALJ of failing to discuss the referenced "opinion" by Dr. Simons.

13

If Dr. Simons actually had rendered such an opinion, Plaintiff's arguments would carry more weight. However, the cited page is not a medical opinion, but merely an initial office visit note dated June 28, 2019 that records, under "History of Present Illness," Plaintiff's *subjectively reported* limitations.[7] Nowhere in the record does Dr. Simons ever offer *any* medical opinions concerning Plaintiff's functional limitations. To the contrary, as discussed by the ALJ and above, Dr. Simons' clinical notes and examination records support the RFC as determined.

While Plaintiff may disagree with the ALJ's assessment of the medical opinion evidence, he has failed to demonstrate any factual or legal error. Instead, he simply asks this Court to reweigh the evidence in order to reach a different conclusion. But the only issue for this Court is whether the Commissioner's decision is substantially supported. *See Walters v. Com'r of Soc. Sec.*, 127 F.3d at 528 (acknowledging that it is not a court's role to resolve conflicts in the evidence). A court may not reverse even if there is substantial evidence to support an alternative conclusion, so long as the ALJ's analysis falls within a "zone of choice." That standard is met here. *See generally*, *Biestek v. Berryhill*, 139 S. Ct. 1148,1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

---

[7] Plaintiff subjectively reported that at the time of the initial visit he was experiencing pain "rated at 9 out of 10," and stated that his pain causes extreme limitations. However, Dr. Simons' objective exam reflects that Plaintiff exhibited "no overt pain behavior" despite standing up and sitting down "for comfort." (Tr. 1933).

14

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                             *s/Stephanie K. Bowman*
                                             Stephanie K. Bowman
                                             United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

LESTER M., 

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:20-cv-952

Cole, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).